# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IAL LOGISTICS INDIA LIMITED, et al., | CASE NO. 5:18-cv-2864 |
| PLAINTIFFS, | JUDGE SARA LIOI |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| WILLIAM SHEPPEE (USA) LTD., | |
| DEFENDANT. | |

Before the Court is the motion to dismiss under Fed. R. Civ. P. 12(b)(6) and for summary judgment under Fed. R. Civ. P. 56 filed by defendant William Sheppee (USA) Ltd. ("Sheppee USA"). (Doc. No. 9 ["Mot. 1"].) Plaintiffs IAL Logistics India Limited ("IAL Logistics") and IAL Container Line (USA) Inc. ("IAL USA") (collectively, "IAL") filed a memorandum in opposition (Doc. No. 12 ["Opp'n 1"]), and Sheppee USA filed a reply (Doc. No. 13 ["Reply 1"]).[1] For the reasons set forth herein, the motion is granted.

Also before the Court is Sheppee USA's motion to dismiss under Fed. R. Civ. P. 12(b)(1). (Doc. No. 14 ["Mot. 2"].) IAL filed a memorandum in opposition. (Doc. No. 18 ["Opp'n 2"].) Sheppee USA filed a reply. (Doc. No. 19 ["Reply 2"].) For the reasons set forth herein, the motion is granted.

---

[1] IAL also filed a motion for leave to file a surreply brief. (Doc. No. 15.) Sheppee USA filed its opposition (Doc. No. 16) and IAL filed a reply (Doc. No. 17). The motion for leave is denied.

I.  **FACTUAL BACKGROUND**

On December 13, 2018, IAL filed its complaint (Doc. No. 1, Complaint ["Compl."]), which it amended on March 8, 2019 (Doc. No. 10, First Amended Complaint ["FAC"]), after the first motion to dismiss had been filed.

In support of its claims, IAL alleges that Vikram Singh Associates, as seller of merchandise to Sheppee USA, appointed IAL Logistics as a freight forwarder for the purpose of arranging transportation of various merchandise shipments from India to the United States. (FAC ¶ 6.) IAL Logistics appointed IAL USA as its delivery agent. (*Id.* ¶ 7.)

IAL Logistics issued several bills of lading, referred to as "House Bills," for carriage of the merchandise on a "freight collect" basis, making the party taking delivery responsible for payment of freight charges and listing Sheppee USA as the "notify" party. (*Id.* ¶ 11.) House Bills were issued by IAL Logistics between December 23, 2015 and May 18, 2016; IAL USA issued corresponding freight invoices for the shipments. (*Id.* ¶ 12 & Exs. A–J.) The total amount of the freight charges was $44,450.00, toward which Sheppee USA has allegedly paid only three payments of $4,650.00 each. (FAC ¶¶ 15–16.)

IAL claims that, on September 10, 2018, after the parties exchanged several offers and counteroffers for settlement, Sheppee USA first agreed to pay $25,000 in two installments by the end of October 2018, and then confirmed (in early October) that it would make one lump sum payment of $25,000. (*Id.* ¶¶ 25–26.) On October 15, 2018, and again on October 24, 2018, IAL informed Sheppee USA that it was prepared to commence litigation due to Sheppee USA's continued failure to pay the lump sum settlement. (*Id.* ¶¶ 27–28.)

On December 13, 2018, IAL commenced this action, asserting a claim for breach of a maritime contract and a claim for unjust enrichment. It amended the complaint on March 8, 2019, adding the claim for breach of settlement agreement.

## II. DISCUSSION

### A. Motion to Dismiss Under Rule 12(b)(1)

Count one of the FAC asserts a claim for breach of an alleged settlement agreement entered into on or about September 10, 2018.[2] (FAC ¶¶ 18–25.) The original complaint contained no such claim, although it was filed at a time IAL already knew of Sheppee USA's alleged breach of the settlement. This count was added by way of the FAC, and was followed by a separate motion to dismiss.[3]

Sheppee USA argues that this Court lacks subject matter jurisdiction over the claim for breach of the settlement agreement because it is well-settled that any such claim is simply a contract dispute, properly within the purview of state courts and state common law. (Mot. 2 at 275.) Sheppee USA asserts that this claim does not fall under maritime jurisdiction, nor is it

---

[2] There is nothing to suggest that this agreement was anything other than oral, having been confirmed "via telecommunications between [IAL's] counsel and [Sheppee USA.]" (FAC ¶ 26; *see also* Opp'n 2 at 309 (all page number references are to the page identification number generated by the Court's electronic docketing system).)

[3] Fed. R. Civ. P. 15(a)(1)(B) permits a party to amend its pleading "once as a matter of course within . . . 21 days after service of a motion under Rule 12(b), (e), or (f)[.]" The rule was revised in 2009 and the commentary indicates that the amendment was intended to "force the pleader to consider carefully and promptly the wisdom of amending *to meet the arguments of the motion*." Fed. R. Civ. P. 15(a)(1) advisory committee's note to 2009 amendment (emphasis added). The commentary further states that "[a] responsive amendment *may avoid the need to decide the motion* or *reduce the number of issues to be decided*, and will expedite determination of issues that otherwise might be raised seriatim." *Id.* (emphases added). Unfortunately, the FAC does not even attempt to "meet the arguments of the motion." Rather, it simply *adds* (i.e., "raise[s] seriatim") a claim for breach of a settlement agreement—a claim that plaintiffs already had knowledge of *before* the original complaint was filed and arguably should have included in that complaint if it intended to pursue the claim. The FAC, rather than "avoid[ing] the need to decide [a] motion[,]" instead triggered a second, completely different, motion. In its opposition to this second motion to dismiss, IAL declares that it filed its FAC "as a matter of right pursuant to Fed. R. Civ. P. 15(a)(1)(B)." (Opp'n 2 at 307.) In light of the advisory committee's notes, the Court finds this questionable; but, since Sheppee USA has not raised this issue, the Court will not address it further.

3

covered by diversity jurisdiction (since the amount in controversy is less than $75,000), or any form of ancillary jurisdiction.

Sheppee USA relies upon *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). In *Kokkonen*, "the Supreme Court held that, in enforcing a settlement agreement that produced the dismissal of an earlier federal suit, a federal court adjudicates a breach-of-contract controversy distinct from the dismissed suit." *Limbright v. Hofmeister*, 566 F.3d 672, 674 (6th Cir. 2009). "Therefore, '[e]nforcement of the settlement agreement . . . requires its own basis for jurisdiction[,]'" *Id.* (quoting *Kokkonen*, 511 U.S. at 378), "such as diversity or federal question jurisdiction[.]" *Id.* at 676.

Here, there is no allegation that the breached settlement agreement addressed in count one of the FAC "produced the dismissal of an earlier federal suit," or, for that matter, the dismissal of *any* suit. IAL merely alleges that it had an enforceable settlement agreement (*i.e.*, a contract) with Sheppee USA. Nor is there any allegation that the alleged settlement agreement was incorporated within one of this Court's orders, such that this Court would have ancillary jurisdiction to enforce the terms of the order. Any negotiations that may have resulted in the alleged oral settlement agreement that IAL now seeks to enforce were not supervised by this Court in the first instance. In addition, there is no federal question jurisdiction over the claim, and no one argues that there is. Nor is there diversity jurisdiction because the amount in controversy is insufficient, even if citizenship may be diverse.

The only possible source of jurisdiction would be supplemental jurisdiction. Although IAL never alleged supplemental jurisdiction in either the original complaint or the first amended complaint, it argues in its opposition brief that such jurisdiction exists *and* that "there are no obvious or compelling reasons for the Court to decline to exercise supplemental jurisdiction in this

action." (Opp'n 2 at 314.) An opposition brief, or a brief of any kind, is not an appropriate means for amending a complaint. *D.E.&J. Ltd. P'ship v. Conaway*, 133 F. App'x 994, 1001–02 (6th Cir. 2005) (collecting cases where courts did not construe statements in briefs as motions to amend). That said, any such defect in the complaint could be cured by way of further amendment for the sole purpose of alleging supplemental jurisdiction, and any such amendment would not be prejudicial under the circumstances.

But even if supplemental jurisdiction were alleged, the Court would decline, in its discretion, to exercise it over the claim for breach of settlement agreement because the facts and circumstances underlying any federal claim for breach of a maritime contract are completely unmoored from the facts and circumstances surrounding any supplemental claim for breach of a settlement agreement. *See* 28 U.S.C. § 1367(a) (requiring claims over which there is supplemental jurisdiction to be "so related to claims . . . within [the Court's] original jurisdiction that they form part of the same case or controversy").

Finally, even if maritime jurisdiction were to provide a basis for exercising supplemental jurisdiction over this claim, the Court would also dismiss the claim under Section 1367(c)(3) because, as discussed below, the maritime claim over which there is original jurisdiction is being dismissed as time-barred.

Accordingly, Sheppee USA's motion (Doc. No. 14) to dismiss count one (breach of settlement agreement) for lack of subject matter jurisdiction is granted.

**B.     Motion to Dismiss Under Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above

5

the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 555 n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).[4]

Although a plaintiff generally need not plead the lack of an affirmative defense to state a claim sufficient to withstand a motion to dismiss, where the allegations of the complaint "affirmatively show that the claim is time-barred[,] . . . dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (citing *Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007)).

---

[4] Sheppee USA's Rule 12(b)(6) motion seeks conversion to a motion for summary judgment, apparently because of the exhibits attached to the motion. But these exhibits, although not themselves attached to the complaint or first amended complaint, "are central to the claims contained therein." *Bassett*, 528 F.3d at 430. Therefore, the motion to dismiss has not been converted to a motion for summary judgment.

### 1. Count Two of the FAC

In count two of the FAC (which was count one in the initial complaint), IAL sets forth a claim for breach of a maritime contract based on Sheppee USA's alleged failure to pay outstanding and overdue freight charges in the amount of $30,500.00. This claim indisputably falls within the Court's maritime jurisdiction under 28 U.S.C. § 1333, *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004) (holding that a contract comes within maritime jurisdiction based upon the "nature and character of the contract" and "whether it has reference to maritime service or maritime transactions[]"), and it is so pleaded by IAL. (*See* Compl. ¶ 3; FAC ¶ 3.) "A contract is maritime in nature when its 'primary objective is to accomplish the transportation of goods by sea' from a foreign port to a port in the United States." *Nippon Yusen Kaisha v. FIL Lines USA Inc.*, 977 F. Supp. 2d 343, 347–48 (S.D.N.Y. 2013) (quoting *Kirby*).

In its Rule 12(b)(6) motion, Sheppee USA argues that plaintiffs' claims are time-barred under the following term contained in each of the maritime contracts between the parties:

> 22. Limitation of action:
>
> *Any* action relating to Multimodal Transport under these conditions *shall be time-barred* if judicial proceedings have not been instituted within a period of nine months after:
>
> (1) the *date of delivery* of the goods, or
> (2) the date when the goods should have been delivered, or
> (3) the date on and from which the party entitled to receive has the right to treat the goods as lost.

(Mot. 1 at 89 (quoting Exhibits A–K); *see e.g.*, Doc. No. 9-2 at 94.) IAL seems to suggest that neither Sheppee USA nor this Court may rely on the exhibits attached to the motion to dismiss because they are "outside the pleadings." This is simply incorrect under the teaching of *Bassett*, *supra*. Where a complaint is based upon an alleged breach of a contract, the Court may consider

the terms of the contract on a motion to dismiss. *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012) (considering copies of contracts attached to motion to dismiss that were referenced in and central to plaintiff's complaint).

IAL also argues that the contractual provision in paragraph 22 of their contracts does not apply because it arises from the time limits in the Multimodal Transportation Act applying to suits for "damage, delay or loss of the shipper's or consignee's goods." (Opp'n 1 at 159.) Since IAL's claim is for freight charges, Sheppee USA claims paragraph 22 is inapplicable.

As authority for this position, Sheppee USA relies upon the declaration of Joy Thattil Ittoop ("JTI"), who purports to be a member of the bar in India. (*See* Doc. No. 12-1, Declaration of Joy Thattil Ittoop ["JTI Decl."] ¶ 1.) This declaration was apparently submitted pursuant to IAL's notice, under Fed. R. Civ. P. 44.1, that it intended to raise an issue regarding the application of the law of the Republic of India. (*See* Doc. No. 11.) Rule 44.1 provides:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Fed. R. Civ. P. 44.1. This rule was "added by amendment to furnish Federal courts with a uniform and effective procedure for raising and determining an issue concerning the law of a foreign country." *Id.* advisory committee's 1966 rule adoption note.

"Under Rule 44.1, 'expert testimony accompanied by extracts from foreign legal materials is the basic method by which foreign law is determined.'" *Taglieri v. Monasky*, No. 1:15CV1052, 2018 WL 7575037, at *2 (N.D. Ohio Jan. 26, 2018) (quoting *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 713 (5th Cir. 1999) (citing *Republic of Turk. v. OKS Partners*, 146 F.R.D. 24, 27 (D. Mass. 1993) (collecting cases))).

8

Here, even if the Court considers the declarant to be an expert, the declaration is no more than a series of unsupported statements characterizing legal conclusions as "facts" that are purportedly "based on information provided in the annexed exhibits." (JTI Decl. ¶ 1.) The only exhibit annexed to the declaration is a copy of The Multimodal Transportation of Goods Act of 1993, an Act of the Parliament of India. The declaration states, without reference to any other "foreign legal materials," that paragraph 22 of the House Bill of Lading can only apply where there has been delay or nondelivery of goods. (*Id.* ¶ 6.) In turn, JTI declares that the three-year limitations period contained in the Limitation Act of 1963 is applicable here, where the issue is unpaid freight charges. (*Id.* ¶ 9; *see* Doc. No. 12-2.)

"[E]xpert testimony is not 'an invariable necessity in establishing foreign law, and indeed, federal judges may reject even the uncontradicted conclusions of an expert witness and reach their own decisions on the basis of independent examination of foreign legal authorities.'" *Taglieri*, 2018 WL 7575037, at *2 (quoting *Access Telecom*, 197 F.3d at 713).

The Court rejects the declaration of JTI. First, although there is no reason to disbelieve that JTI is an attorney in India, it would have been more convincing had a certificate of good standing, or its equivalent, been submitted. Second, even assuming, as the Court does for purposes of this ruling, that JTI is an attorney in good standing in India, the declaration does not supply any reason for this Court to assign *expert* credentials to this declarant; it does not even indicate how long JTI has been practicing law in India, much less reveal any special area of practice that might confer expert status. Third, the declaration is devoid of citation to the case law of India, any other precedential citation in support of its legal conclusions (again, characterized as "facts"), or even, for that matter, general maritime law.

9

Legal interpretation is a matter for the Court, and differences in such interpretation do not set up a material *factual* dispute, as argued by IAL. (*See* Opp'n 1 at 158.) Importantly, this Court has no reason to think that any court in India would do other than courts of the United States generally do when interpreting a contract—apply the plain language meanings.[5]

Here, the back side of each contract is captioned: "Standard Conditions governing Multimodal Transport Documents issued in accordance with Multimodal Transportation of Goods Act, 1993." (*See, e.g.*, Doc. No. 9-2 at 94.) Various "conditions" are set forth, including paragraph 22, addressing "Limitation of Action." As quoted above, it states, in relevant part, that "*[a]ny action relating to* Multimodal Transport *under these conditions* [i.e., the Standard Conditions on the back of the contract] shall be time-barred if judicial proceedings have not been instituted within a period of nine months after" three itemized dates. This is very broad language. As Sheppee USA correctly argues, it does not exclude an action under the contract to recover unpaid freight charges.

Applying the plain language of the contract, this action is contractually time-barred because it is undisputed that the *final* delivery (for House Bill No. JPR PHL 1435110; Container No. TCLU 9434900) (FAC ¶ 12 j & Ex. J) was made on June 22, 2016. (Mot.1 Ex. K (Doc. No. 9-12).) The complaint was filed, not on March 22, 2017 ("nine months after the . . . date of delivery of the goods[]"), but on December 13, 2018, over twenty (20) months too late.

---

[5] As suspected, the Court's rudimentary search on the internet quickly revealed a case from the Supreme Court of India. In *Nabha Power Limited v. Punjab State Power Corporation Limited*, Civil Appeal No. 179 of 2017, the court was considering whether to imply terms into a contract. Reviewing certain principles of contract interpretation, it noted that "normally a contract should be read as it reads, as per its explicit terms." It reaffirmed that, unless a court is satisfied that the particular implied meaning would have been in the minds of both parties to the contract, the court "ought not to imply a term which the parties themselves have not expressed." https://indiankanoon.org/doc/10332596/ (last visited 5/7/2019). Thus, much like courts in the United States, courts in India generally interpret contracts applying plain language meanings.

The claim for breach of a maritime contract is time-barred. Therefore, Sheppee USA is entitled to dismissal of the claim with prejudice, and the same shall be ordered.

2. **Count Three of the FAC**

In count three of the FAC (which was count two in the initial complaint), IAL asserts a claim for unjust enrichment, likely as an alternative to the maritime breach of contract claim, although the FAC is not explicit in this regard. *Fultz & Son, Inc. v. Browning-Ferris Indus. of Ohio, Inc.*, No. 3:17-CV-00053, 2017 WL 4012924, at *2 (N.D. Ohio Sept. 12, 2017) ("Unjust enrichment is a quasi-contractual claim that may be pled in the alternative to a breach of contract claim.").

IAL does not state the basis of this Court's jurisdiction over what is ordinarily a common law claim brought under the Court's supplemental jurisdiction. It appears that both parties view this claim as falling under the Court's maritime jurisdiction. Taking that as true, this quasi-contractual claim would be equally barred by the nine-month limitation period in the bill of lading. And if the claim does not fall under maritime jurisdiction, the Court's jurisdiction over the unjust enrichment claim is supplemental. Having now dismissed the only federal claim as contractually time-barred, the Court, in the alternative, would decline the exercise of supplemental jurisdiction over this common law claim. 28 U.S.C. § 1367(c)(3). In either case, count three is dismissed.

Accordingly, Sheppee USA's Rule 12(b)(6) motion (Doc. No. 9) is granted.

## III. CONCLUSION

For the reasons set forth herein, both motions to dismiss are granted.  Case closed.

**IT IS SO ORDERED**.


Dated: July 8, 2019

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**